**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT and NATURAL RESOURCES DEFENSE COUNCIL, INC., | ) ) ) ) ) Civil Action No. _____ |
| Plaintiffs, | ) ) |
| v. | ) **COMPLAINT FOR INJUNCTIVE** ) **AND DECLARATORY RELIEF** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and ANDREW WHEELER, in his official capacity as Acting Administrator of the United States Environmental Protection Agency. | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## INTRODUCTION

1.      This suit challenges the United States Environmental Protection Agency's ("EPA") violations of its statutory obligations to regulate methylene chloride, a lethal chemical that EPA acknowledges presents unreasonable risks to workers, consumers, and bystanders when used in paint and coating removal products ("paint strippers").  Methylene chloride causes cancer, heart attacks, and sudden death from asphyxiation, with many users losing consciousness while applying off-the-shelf paint stripping products.  According to public records, more than 50 people have already died from exposure to methylene chloride paint strippers, and countless others continue to face increased risks of death and other serious health effects.

2.      More than two years ago, EPA determined that methylene chloride's commercial and consumer paint stripping uses "present[] an unreasonable risk of injury to health or the

environment," triggering the need for regulation under section 6 of the Toxic Substances Control Act ("TSCA"). 15 U.S.C. § 2605(a). In January 2017, EPA proposed to ban these uses to eliminate their unreasonable risks (the "Proposed Ban"). 82 Fed. Reg. 7464 (Jan. 19, 2017).

3.     In the years since then, at least four more people – including at least two workers – have died from exposure to methylene chloride paint strippers. In May 2018, after a meeting with the families of two of those victims, EPA reiterated its unreasonable risk determination and stated that it would finalize the Proposed Ban "shortly." However, in violation of its non-discretionary duties under TSCA section 6, EPA has failed to do so.

4.     Section 7 of TSCA separately requires EPA to take immediate steps to protect against "imminently hazardous chemical substance[s]" that are likely to result in serious injury before proposed regulations are finalized. 15 U.S.C. § 2606(a)(1). Methylene chloride is not only likely to result in injury, but it has already caused multiple deaths while the Proposed Ban has languished before EPA. Moreover, with approximately 1.3 million consumers and workers exposed each year, methylene chloride will continue to present an imminent hazard until it is removed from use.

5.     TSCA authorizes reviewing courts "to compel [EPA] to perform any act or duty under this [Act] which is not discretionary." *Id.* § 2619(a)(2). Based on its unreasonable risk determination, EPA has a non-discretionary duty to finalize the Proposed Ban on commercial and consumer uses of methylene chloride paint strippers, as well as to abate the imminent hazards posed by methylene chloride.

6.     EPA's inaction also violates the Administrative Procedure Act's ("APA") directive that agencies conclude matters within a reasonable time and that required agency action cannot be "unreasonably delayed." Given the risks posed by methylene chloride and the

2

acknowledged need for the Proposed Ban, there is no basis for EPA's delays to date, much less any further delay.

7.     Plaintiffs seek a declaratory judgment and an order compelling EPA to finalize the Proposed Ban on commercial and consumer uses of methylene chloride for paint stripping.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). This action arises under TSCA, 15 U.S.C. § 2601 *et seq.*, the APA, 5 U.S.C. § 551 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

9.     Venue is properly vested in this Court under 28 U.S.C. § 1391(e) as Plaintiff Natural Resources Defense Council resides and maintains its headquarters in the Southern District of New York.

## PARTIES

10.     Plaintiff Labor Council for Latin American Advancement ("LCLAA") is a not-for-profit corporation organized and existing under the laws of Washington, D.C., where it maintains its headquarters.  LCLAA is a membership organization that represents the interests of approximately two million Latino and Latina workers in the labor movement, throughout the United States and Puerto Rico.  Many LCLAA members work in construction trades where methylene chloride paint strippers are routinely used.  EPA has acknowledged that methylene chloride presents a disproportionate risk to Latino and Latina workers, who are more likely to be exposed to the chemical at work.  82 Fed. Reg. at 7476.  LCLAA is dedicated to the protection and safety of its members.

11.    Plaintiff Natural Resources Defense Council ("NRDC") is a not-for-profit corporation organized and existing under the laws of the State of New York, where it maintains its headquarters.  NRDC is a national environmental organization with nearly 400,000 members. More than 34,000 of these members live in the State of New York.  NRDC's institutional purposes include protecting public health and the environment from the risks and harms associated with exposure to toxic chemicals. NRDC has long been active in efforts to prevent and reduce risks associated with methylene chloride, and submitted comments in support of EPA's proposed ban.  Many NRDC members live in apartment buildings, condominiums, row houses, townhouses, and duplexes. These members generally cannot prevent strong chemical fumes in neighboring units from penetrating their walls and floors, including fumes from methylene chloride-based paint strippers.

12.    Plaintiffs are harmed by EPA's failure to finalize the Proposed Ban.  Plaintiffs' members face exposure to methylene chloride in paint strippers in their homes and workplaces, and they often lack control over the paint stripping products that they are exposed to.  EPA's inaction thus leaves Plaintiffs' members at increased risk of injury from methylene chloride, harms that are the direct result of EPA's failure to finalize the Proposed Ban and that would be redressed by the requested judicial relief.  The protection of workers and consumers from methylene chloride is directly relevant to Plaintiffs' respective organizational missions, and the relief sought by Plaintiffs does not require the individual participation of Plaintiffs' members.

13.    Defendant United States Environmental Protection Agency is an agency of the United States charged with implementation of federal environmental laws, including TSCA.

14.    Defendant Andrew Wheeler is the Acting Administrator of EPA.  Mr. Wheeler is serving as the chief officer of EPA; he is the federal official ultimately responsible for EPA's

administration and implementation of its legal duties. Acting Administrator Wheeler issued in his official capacity.

## LEGAL BACKGROUND

### TSCA

15.     The nation's principal chemical safety law, TSCA requires EPA to evaluate the risks posed by chemicals in commerce (during manufacturing, processing, distribution, use or disposal, or any combination thereof) and to protect the public and the environment from unreasonable risks.  TSCA embodies "the policy of the United States that . . . adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment, and to take action with respect to chemical substances and mixtures which are imminent hazards."  15 U.S.C. 2601(b)(2).

16.     In 2016, Congress amended TSCA in order to "enhanc[e] EPA's authority to regulate chemicals." 162 Cong. Rec. S3514, 2016 WL 3172504 (June 7, 2016).

17.     A key aspect of the 2016 amendments is the requirement that EPA consider risks posed to "potentially exposed or susceptible subpopulations," 15 U.S.C. § 2605(b)(4)(A), which TSCA defines as groups who "due to either greater susceptibility or greater exposure, may be at greater risk than the general population of adverse health effects from exposure" to chemicals, *id.* § 2602(12).  Congress specifically identified workers in a non-exhaustive list of sub-populations warranting particular attention in EPA's efforts to identify and protect against unreasonable chemical risks.  *Id.*

18.     At the time of the 2016 amendments, EPA had already completed risk assessments for several chemicals, including methylene chloride, under the prior version of

TSCA. Instead of requiring EPA to re-start the risk evaluation process for these chemicals under the amended law, Congress authorized EPA to "publish proposed and final rules under [TSCA Section 6(a)] that are consistent with the scope of the completed risk assessment for the chemical substance . . . ." 15 U.S.C. § 2625(l)(4).

19.      TSCA section 6(a) requires EPA to regulate chemicals that are found to present an "unreasonable risk of injury to health or the environment." *See id.* § 2605(a). EPA's obligations under section 6(a) are non-discretionary; if EPA determines that a chemical presents unreasonable risk, "the Administrator *shall by rule*" regulate the chemical "to the extent necessary so that the chemical substance . . . no longer presents such risk." *Id.* (emphasis added).

20.      TSCA establishes additional requirements governing "imminently hazardous chemical substance[s] or mixture[s]," those chemicals that are "likely to result" in "unreasonable risk of serious or widespread injury to health or the environment . . . before a final rule under [section 6] can protect against such risk." *Id.* § 2606(f).

21.      To protect the public from an imminently hazardous chemical substance, EPA must either: (1) make a proposed section 6(a) rule effective immediately upon its publication in the Federal Register, *id.* § 2605(d)(3)(A), or (2) "commence in a district court of the United States . . . a civil action" under section 7(a)(2) of TSCA for the seizure of the chemical or other relief, *id.* § 2606(a)(2). EPA can choose between those options, but it must select one. Therefore, if EPA "has not made a rule under [section 6(a)] immediately effective . . . with respect to an imminently hazardous chemical substance or mixture, the Administrator *shall commence*" a civil action under section 7(a). *Id.* (emphasis added).

22.      TSCA's citizen suit provision provides that "any person may commence a civil action . . . against the Administrator to compel the Administrator to perform any act or duty

under this chapter which is not discretionary," or against "any person (including (A) the United

States . . . ) who is alleged to be in violation of [TSCA]." *Id.* § 2619(a)(1)-(2).

The APA

23.     The APA directs each federal agency "to conclude a matter presented to it"

"within a reasonable time."  5 U.S.C. § 555(b).

24.     A reviewing court will compel action under the APA if the agency has a duty to

act and it has "unreasonably delayed" the discharge of that duty.  *Id.* § 706(1).


**FACTUAL BACKGROUND**

A.     <u>Methylene Chloride Presents an Unreasonable Risk of Serious Harm and Death</u>

25.     Methylene chloride is a volatile, colorless solvent used in paint stripping products

sold for both consumer and commercial uses.

26.     Methylene chloride evaporates quickly upon application, giving off toxic fumes

that accumulate in confined spaces.  Inhaling these fumes causes carbon monoxide to build up in

the blood, leading to heart failure, asphyxiation, coma, and sudden death.

27.     According to government records and published reports, at least 50 people have

died from methylene chloride exposure since 1980, some in less than 10 minutes.  This toll is

acknowledged to be an underestimate, as it does not capture methylene chloride deaths that were

unreported or mistakenly attributed to other causes.

28.     Most of those deaths have been of workers, exposed to methylene chloride on the

job.  However, methylene chloride paint strippers have harmed not only those overcome while

using them, but also others who have rushed in to provide assistance and bystanders in the same

building where methylene chloride paint strippers were used.

29.     In the Proposed Ban, EPA specifically "identified risks . . . to children who may be present as bystanders in homes where paint removal occurs . . . includ[ing] neurological effects such as cognitive impairment, sensory impairment, dizziness, incapacitation, and loss of consciousness . . . ."  82 Fed. Reg. at 7467.  EPA also warned of potential risks to "children and other residents of apartments or hotel rooms adjacent to units in which paint and coating removal is being conducted."  *Id.* at 7476-77.

30.     In addition to its acute impacts, chronic exposure to methylene chloride presents an increased risk of liver toxicity, kidney toxicity, reproductive toxicity, specific cognitive impacts, and cancers such as brain cancer, liver cancer, certain lung cancers, non-Hodgkin's lymphoma, and multiple myeloma.  *Id.* at 7466.

B.      EPA Has Long Acknowledged Methylene Chloride's Unreasonable Risks

31.     EPA has known of the threat posed by methylene chloride for decades, warning in 1994 that "[h]umans acutely exposed to methylene chloride experience adverse effects of the central nervous system and the heart" and that "overexposure to methylene chloride . . . has resulted in worker deaths."  Chemical Summary for Methylene Chloride, EPA-749-F-94-018a, at 5 (August 1994).

32.     Using its TSCA authority, EPA in 2012 commenced a multi-year risk assessment of methylene chloride's paint stripping uses.  EPA published its proposed risk assessment for public comment and peer review in 2013, and released the final TSCA Work Plan Chemical Risk Assessment – Methylene Chloride: Paint Stripping Use (the "Risk Assessment") in August 2014.

33.     The Risk Assessment concluded that acute (short-term) exposure to methylene chloride paint strippers presents an increased risk of "death; neurological impacts such as coma, incapacitation, loss of consciousness, and dizziness; and liver effects," and that chronic (long-

8

term) exposure to those products presents an increased risk "brain, liver, lung, and hematopoietic cancers and liver damage." 82 Fed. Reg. at 7471.  In many circumstances, the projected worker, consumer, or bystander exposures to methylene chloride from paint strippers were hundreds of times greater than the levels of exposure that EPA deems safe.  *Id.* at 7478, 7480.

34.    Based on the Risk Assessment, EPA on January 19, 2017, proposed a ban on consumer and commercial uses of methylene chloride in paint strippers under TSCA section 6(a).  The Proposed Ban stated that "methylene chloride exposures during paint and coating removal present unreasonable risks," citing the Risk Assessment as the principal evidence of such risks.  *Id.* at 7478.[1]

35.    In particular, EPA found that:

a.    "Methylene chloride is a likely human carcinogen, a neurotoxicant, and acutely lethal," *id.* at 7468;

b.    "Several individuals have died after becoming incapacitated during paint and coating removal with methylene chloride; after losing consciousness, their nervous system is overcome by the continued accumulation of volatile fumes," *id.* at 7482;

c.    "Acute risks of neurological effects [exist] for most workers . . . even when respiratory protection is used," *id.* at 7471;

d.    "Chronic inhalation exposure to methylene chloride such as during paint and coating removal has been shown to result in increased risk for non-Hodgkin[] lymphoma (NHL) or multiple myeloma in workers," as well as increased risk of liver cancer, brain cancer, and acute kidney failure, *id.* at 7483-84;

---

[1] In the Proposed Ban, EPA carved out the use of methylene chloride in commercial furniture refinishing, stating that EPA "intends to issue a separate proposal" addressing those risks.  82 Fed. Reg. at 7466.  While EPA has yet to release such a proposal, the use of methylene chloride for furniture refinishing is not at issue in this action.

e.  "[W]orkers and occupational bystanders exposed to methylene chloride in paint and coating removal have an increase in cancer risk that ranged from 10 times to almost 1,000 times greater than a cancer benchmark of 1 in 1,000,000," *id.* at 7471.

36.   EPA also stated that Hispanic and foreign-born workers, like those represented by Plaintiff LCLAA, "are disproportionately exposed to methylene chloride during paint and coating removal, and are disproportionately at risk to . . . adverse health effects . . . ." *Id.* at 7485.  EPA explained that this population is disproportionately exposed to methylene chloride in paint strippers because they are overrepresented in construction trades in which methylene chloride is used for paint and coating removal.  *Id.*

37.   EPA considered several alternatives to a comprehensive ban on methylene chloride in paint strippers, including reliance on warning labels, personal protective equipment, and a training and certification program for commercial uses.  However, it rejected those options based on careful analyses, finding that consumers and workers do not consistently understand or comply with warning labels, that not all users are capable of wearing the protective equipment, and that the "costs and challenges involved in regulating distributors and ensuring that only trained and certified commercial users are able to access these paint and coating removal products as a significant limitation for this approach."  *Id.* at 7473-74, 7481.  Ultimately, EPA determined the proposed ban "is necessary so that methylene chloride in paint and coating removal no longer presents an unreasonable risk." *Id.* at 7488.

38.   EPA could have made the Proposed Ban effective immediately upon its publication under TSCA section 6(d)(3).  15 U.S.C. § 2605(d)(3)(A).  However, it chose not to do so.

C.   EPA Has Violated its Statutory Obligations and Public
Commitments to Ban Methylene Chloride

39.     EPA accepted public comment on the Proposed Ban through May 19, 2017.

40.     In the more than two years that the Proposed Ban has been pending before EPA, at least four more people, including at least two workers, have died from exposure to methylene chloride paint strippers.

41.     On April 28, 2017, 21-year-old Kevin Hartley died on the job from methylene chloride exposure while refinishing a bathtub at a Nashville apartment complex.  He was wearing a respirator at the time.

42.     On June 23, 2017, a 43-year-old Latino worker died from methylene chloride exposure while refinishing a bathtub in a Southern California apartment.

43.     On October 13, 2017, 31-year-old Drew Wynne died from methylene chloride exposure while stripping paint from the floor of his small business in North Charleston, South Carolina.  He was wearing a respirator in a ventilated room.

44.     On February 12, 2018, 31-year-old Joshua Atkins died from methylene chloride exposure while stripping paint from his bicycle at his mother's house in South Connellsville, Pennsylvania.

45.     On May 8, 2018, family members of Drew Wynne and Kevin Hartley met with then EPA-Administrator Scott Pruitt to request that EPA finalize its proposed methylene chloride ban.

46.     Two days later, EPA issued a press release entitled "EPA Announces Action on Methylene Chloride." *See* Press Release, *EPA Announces Action on Methylene Chloride* (May 10, 2018), https://www.epa.gov/newsreleases/epa-announces-action-methylene-chloride.  In that document, EPA affirmed that it "intends to finalize the methylene chloride rulemaking," "is not re-evaluating the paint stripping uses of methylene chloride and is relying on its previous risk

11

assessments," and "is working to send the finalized rulemaking to OMB [the White House Office of Management and Budget] shortly." *Id.*

47.     On May 16, 2018, then-EPA Administrator Pruitt testified before the Senate Appropriations Committee's Subcommittee on Interior, Environment, and Related Agencies that he "recently met with individuals impacted by methylene chloride and made the decision to proceed with that [ban] by forwarding it to OMB."

48.     In response to senators' questions, Administrator Pruitt stated that he had already "forwarded to OMB … a proposed rule prohibiting consumer and commercial paint stripping uses for methylene chloride, following through on EPA's January 2017 proposal that methylene chloride be banned from [those] products."

49.     In all four printings of EPA's semi-annual regulatory agenda since the methylene chloride ban was first proposed, EPA has reiterated its finding that methylene chloride paint strippers present unreasonable risk to human health.

50.     EPA is currently preparing a risk evaluation of methylene chloride's non-paint stripping uses under TSCA.  However, EPA deliberately excluded methylene chloride paint strippers from that evaluation because that agency had already "determined that those risks were unreasonable."  EPA, *Problem Formulation of the Risk Evaluation for Methylene Chloride (Dichloromethane, DCM)*, EPA 740-R1-7016 at 21 (May 2018), https://www.epa.gov/sites/production/files/2018-06/documents/mecl_problem_formulation_05-31-18.pdf.

51.     Despite its repeated affirmations of methylene chloride's unreasonable risks, EPA has not complied with its statutory obligation to regulate those risks under TSCA section 6(a).

52.     Despite the fact that multiple people, including several workers, have died from methylene chloride exposure since the ban was proposed, EPA has taken no action to abate methylene chloride's imminent hazards under TSCA section 7.

53.     More than four years after EPA's Risk Assessment documented methylene chloride's unreasonable risks, two years after proposing a ban on methylene chloride paint strippers, and eight months after publicly committing to finalize that ban, EPA has yet to impose any restriction on the use or sale of methylene chloride in consumer or commercial contexts.

54.     On October 31, 2018, pursuant TSCA section 20, Plaintiff LCLAA notified EPA of its intent to file suit if EPA did not finalize the Proposed Ban within 60 days.

55.     On December 6, 2018, pursuant to TSCA section 20, Plaintiff NRDC notified EPA of its intent to file suit if EPA did not finalize the Proposed Ban within 60 days.

56.     Upon information and belief, on December 21, 2018, EPA sent a rule banning consumer uses of methylene chloride paint strippers to OMB for review.

57.     Upon information and belief, unlike the Proposed Ban, the rule that EPA sent to OMB in December does not cover commercial uses of methylene chloride.  Instead, upon information and belief, such uses would be permitted under a separate certification, training and limited access program that has yet to be proposed.

58.     As of this date, EPA has not finalized the Proposed Ban or regulated methylene chloride "to the extent necessary so that [it] no longer presents [unreasonable] risk."  15 U.S.C. § 2605(a).

**FIRST CLAIM FOR RELIEF**

<u>Violations of TSCA Section 6</u>

59.     Plaintiffs incorporate and re-allege each and every allegation in paragraphs 1 through 58.

60.     If EPA determines that a chemical substance "presents an unreasonable risk of injury to health or the environment," TSCA section 6 requires EPA to regulate the chemical "to the extent necessary so that [it] no longer presents such risk."  15 U.S.C. § 2605(a).

61.     EPA has repeatedly affirmed its determination that methylene chloride presents an unreasonable risk of injury to workers and consumers when present in paint strippers.

62.     EPA's proposed ban of commercial and consumer uses of methylene chloride paint strippers is necessary to address that unreasonable risk.

63.     EPA has not banned methylene chloride paint strippers in commercial or consumer contexts to address their unreasonable risk, despite ample time and opportunity to do so.

64.     EPA's failure to ban methylene chloride in paint strippers used in commercial and consumer contexts violates EPA's non-discretionary duty under TSCA section 6(a).


**SECOND CLAIM FOR RELIEF**

<u>Violations of TSCA Section 7</u>

65.     Plaintiffs incorporate and re-allege each and every allegation in paragraphs 1 through 64.

66.     If a chemical is "imminently hazardous," or likely to present an unreasonable risk of serious injury before a proposed section 6 rule can be finalized, TSCA section 7 requires

immediate action to abate such hazards.  In particular, EPA must: (1) make the proposed section 6

rule effective immediately upon its publication in the Federal Register, 15 U.S.C. § 2605(d)(3)(A),

or (2) "commence in a district court of the United States . . . a civil action" under section 7(a)(2) of

TSCA for the seizure of the chemical or other relief.  *Id.* § 2606(a)(2).

67.     Methylene chloride is an imminently hazardous chemical substance, which has

already caused serious injury while EPA's proposed ban has been pending.

68.     EPA did not make its proposed ban effective upon publication in the Federal

Register.

69.     EPA has not commenced a civil action seeking to abate the imminent hazards

posed by methylene chloride.

70.      EPA's failure to take action to abate methylene chloride's imminent hazards

violates EPA's non-discretionary duties under TSCA section 7.


**THIRD CLAIM FOR RELIEF**

Violations of the APA

71.     Plaintiffs incorporate and re-allege each and every allegation in paragraphs 1

through 70.

72.     The APA requires that agencies "shall" conclude matters presented to them

"within a reasonable time," and authorizes the Court to "compel agency action unlawfully

withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1).

73.     EPA determined that methylene chloride presents unreasonable risk in paint

strippers used in commercial and consumer contexts more than two years ago, giving rise to a

non-discretionary duty to issue final regulations addressing such risk.

74.    EPA proposed a ban on methylene chloride in paint strippers more than two years ago.

75.    EPA stated that it would finalize its methylene chloride ban "shortly" more than eight months ago.

76.    Despite ample opportunity, EPA has not finalized its proposed ban on methylene chloride in paint strippers or provided any lawful reason for its continued delay.

77.    EPA's failure to conclude its methylene chloride rulemaking within a reasonable time constitutes agency action "unreasonably delayed," in violation of the APA.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A.    Adjudge and declare that EPA has a non-discretionary duty to regulate methylene chloride in paint strippers when sold for both commercial and consumer use, and that EPA's failure to do so violates TSCA and the APA;

B.    Order EPA to finalize its proposed ban on methylene chloride in paint strippers when used both commercially and by consumers within thirty (30) calendar days of the Court's order;

C.    Adjudge and declare that EPA has a non-discretionary duty to abate the imminent hazards associated with methylene chloride, and that EPA's failure to do so violates TSCA and the APA;

D.    Order that EPA shall commence a civil action under TSCA section 7(a) within thirty (30) days;

E.      Retain jurisdiction of this matter until Defendants have fulfilled their statutory

and Court-ordered obligations;

F.      Award Plaintiffs their reasonable costs and attorneys' fees pursuant to pursuant to

28 U.S.C. § 2412; and

G.      Grant such other and further relief as the Court deems just and proper.


Dated: February 19, 2019                              Respectfully submitted,

                                                      /s/ Jonathan Kalmuss-Katz
                                                      Jonathan Kalmuss-Katz
                                                      Eve Gartner
                                                      Earthjustice
                                                      48 Wall Street, 15th Floor
                                                      New York, New York 10005
                                                      (212) 845-7376
                                                      jkalmusskatz@earthjustice.org
                                                      egartner@earthjustice.org
                                                      *Counsel for Plaintiff Labor Council
                                                      For Latin American Advancement*

                                                      /s/ Nancy Marks
                                                      Nancy Marks
                                                      Brenden Cline (*pro hac vice* motion
                                                      forthcoming)
                                                      Natural Resources Defense Council
                                                      40 West 20th Street, 11th floor
                                                      New York, New York 10011
                                                      (212) 727-4414
                                                      nmarks@nrdc.org
                                                      bcline@nrdc.org
                                                      *Counsel for Plaintiff Natural
                                                      Resources Defense Council*